IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DUDLEY BOLTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 08-0310-WS-M |
| | ) | |
| **WJV MISSISSIPPI, INC., etc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on the plaintiff's motion to exclude certain testimony of Dr. Graham. (Doc. 77). The defendant has responded, (Doc. 86), and the motion is ripe for resolution.

The complaint alleges that the plaintiff injured his knee when he slipped and fell in water on the floor of the defendant's Pascagoula restaurant. The parties agree that the case is governed by Mississippi law. (Doc. 81 at 2-3). During surgery to address knee problems allegedly stemming from the accident, Dr. Setzler nicked the peroneal nerve, causing a condition known as "foot drop," correction of which required several additional procedures. The plaintiff moves to exclude the testimony of Dr. Graham to the extent "offered to prove that Dr. Roger Setzler committed medical malpractice when he performed arthroscopic surgery on Bolton's knee." (Doc. 77 at 1).[1] The grounds are that Dr. Graham's report "contains no admissible opinions or assertions regarding medical malpractice." (*Id*. at 2).

---

[1] The plaintiff moves also to exclude any testimony from Dr. Graham "as to the standard of care applicable to the arthroscopic procedure performed by Dr. Setzler and as to any breach thereof by Dr. Setzler," as well as "the applicability of the 'layman's exception' to the requirement of expert testimony in medical-malpractice cases." (Doc. 77 at 5). These are but alternate ways of addressing medical malpractice.

[1]

The defendant begins by questioning whether any evidence of malpractice is required in order to invoke the comparative negligence provisions of the Mississippi Code. Mississippi provides for several liability "in any civil action based on fault," and "a joint tort-feasor shall be liable only for the amount of damages allocated to him in direct proportion to his percentage of fault." Miss. Code § 85-5-7(2). "As used in this section, 'fault' means an act or omission of a person which is a proximate cause of injury or death to another person … including, but not limited to, negligence, malpractice, strict liability, absolute liability or failure to warn." *Id*. § 85-5-7(1).

The parties agree that the Mississippi Supreme Court has never resolved whether the term "fault" in Section 85-5-7 requires a showing of at least negligence. The Fifth Circuit, however, has concluded that the high court "would not require a jury instruction or verdict form allowing for fault allocation to a plaintiff unless the jury has before it facts that would allow the jury to find the plaintiff negligent in contributing to her own injury." *Travelers Casualty & Surety Co. of America v. Ernst & Young LLP*, 542 F.3d 475, 493 (5th Cir. 2008).

The defendant suggests the Court should ignore *Travelers* because it constitutes only a "guess" as to how the state supreme court would construe the statute. (Doc. 86 at 2). All *Erie* predictions are in some sense a guess, but in and of itself that does nothing to undermine *Travelers* as persuasive authority; instead, the defendant must persuade the Court that the Fifth Circuit "guessed wrong."

The defendant attempts just that. It argues that Section 85-5-7 cannot require a finding of negligence or more, as *Travelers* concluded, because the statute defines "fault" as "including, but not limited to" negligence. According to the defendant, such non-exclusive language must mean that innocent conduct falling short of negligence constitutes "fault." Moreover, the defendant continues, the statute's reference to "strict liability" and "absolute liability" makes clear that non-negligent conduct is "fault." According to the defendant, "fault" under the statute is simply any act proximately causing injury. (Doc. 86 at 2-4).

[2]

The defendant's argument proves too much. If any act causing injury constituted "fault" under the statute, there would have been no need to list negligence or malpractice (or even strict and absolute liability) as forms of fault. As the defendant concedes, courts must "give effect to all the statutory language in an act of the legislature," (Doc. 86 at 3), and the defendant's reading impermissibly renders the terms "negligence" and "malpractice" superfluous.

The most probable meaning of the statutory language is that whatever form of fault is required in order to establish liability is required in order to establish "fault" under the statute. Thus, malpractice is required when the fault is of a medical or legal professional, strict liability in cases of product liability,[2] and negligence in many other cases. The "including, but not limited to" language simply leaves open the possibility of other legal standards of liability applying to other types of cases.

The defendant next asserts that, even if *Travelers* was correctly decided, it is limited to the situation in which the plaintiff, rather than a non-party, is alleged to be at fault. (Doc. 86 at 2). Section 85-5-7, however, applies equally to parties and non-parties. *See, e.g., Delta Regional Medical Center v. Venton*, 964 So. 2d 500, 502 (Miss. 2007) ("As provided in [Section 85-5-7], fault was apportioned between the physicians, who were not parties to the lawsuit, and [the defendant]."). The *Travelers* Court expressly relied on Mississippi lower court decisions that have "sided with Travelers with regard to non-plaintiffs, recognizing that a party's act or omission will not justify allocation of fault unless the party could be found, at least, negligent." 542 F.3d at 493. Among the cases the *Travelers* Court cited was *Jackson Public School District v. Smith*, 875 So. 2d 1100 (Miss. App. 2004), in which it was ruled that Section 85-5-7 could not be applied to the plaintiff's mother unless she were at least negligent. *Id*. at 1103. *Smith* clearly shows

---

[2] *See, e.g., Moss v. Batesville Casket Co.*, 935 So. 2d 393, 402 (Miss. 2006).

[3]

that the requirement of negligence or more in order to constitute "fault" applies to non-parties as well as parties.[3]

In summary, in order for fault or damages to be allocated to Dr. Setzler under Section 85-5-7, the defendant will be required to prove to the jury that Dr. Setzler committed medical malpractice when he nicked the plaintiff's peroneal nerve. The question becomes whether Dr. Graham's report leaves that option open to the defendant.

"Absent error so obvious that a layman could easily determine fault, expert testimony is generally required to survive summary judgment and establish the negligence of a physician." *Sheffield v. Goodwin*, 740 So. 2d 854, 856 (Miss. 1999). The defendant does not suggest that this is one of the rare cases in which expert testimony is not required.

"To prove a prima facie of medical malpractice, a plaintiff must prove the existence of a duty on the part of the physician to conform to the specific standard of conduct, the applicable standard of care, the failure to perform to that standard, that the breach of duty by the physician was the proximate cause of the plaintiff's injury, and that damages to plaintiff have resulted." *Barner v. Gorman*, 605 So. 2d 805, 808 (Miss. 1992). "When proving these elements in a medical malpractice suit, expert testimony must be used. Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Id*. "Plaintiffs in a medical-malpractice action must establish through expert testimony not only the relevant standard of care, but the manner in which the defendant breached it." *Berry v. Patten*, 2010 WL 5115059 at *10 (Miss. 2010) (en banc). "The standard articulated must be objective, not subjective," and it must reflect "the national standard of care." *Estate of Northrup v. Hutto*, 9 So. 3d 381, 384 (Miss. 2009). Moreover, "[w]hen an expert's

---

[3] The mother was named as the plaintiff, but only in her capacity as next friend and natural guardian of her son, the injured party.

opinion is not based on a reasonable degree of medical certainty, or the opinion is articulated in a way that does not make the opinion probable, the jury cannot use that information to make a decision." *Hans v. Memorial Hospital*, 40 So. 3d 1270, 1279 (Miss. App. 2010) (internal quotes omitted).

A review of Dr. Graham's brief report discloses that it does not articulate a standard of care, objective or otherwise, national or otherwise. Nor does it state that Dr. Setzler's performance fell below this unarticulated standard of care. Nor does it state how Dr. Setzler's performance fell below this standard. Nor does it state that that the plaintiff's foot drop was proximately caused or contributed to by Dr. Setzler's malpractice. No opinion of any stripe is articulated as being based on a reasonable degree of medical certainty, or even probability. The report thus falls far short of articulating the opinions that Mississippi law requires to be articulated in order to create a fact issue on medical malpractice.

The report, in pertinent part, states as follows. "I have not found [nerve injuries to be frequent in knee arthroscopic surgery] in 30 years of practice or teaching. I perform 3-7 knee arthroscopies per week for 30 years and have never seen 1 nerve injury from arthroscopic knee surgery. … Apparently, in this case a mechanically rotating blade was placed within a para-meniscal cyst and resulted in damage to the nerve. A much larger Baker cyst was also present which may have displaced the nerve somewhat from its normal course. An extensive review of the orthopedic literature indicates that peroneal nerve injury is extremely rare and generally results from a meniscal repair done with a technique of suturing called inside out repair. … [T]he unexpected nerve injury had nothing to do with the original slip and fall nor is it part of a routine meniscal repair or excision." (Doc. 77, Exhibit 1).

All that Dr. Graham clearly says is that peroneal nerve injury is rare. He does not identify the proper procedure for avoiding such injury, and he does not state that Dr. Setzler did not employ an appropriate procedure. He appears to say that the peroneal nerve injury resulted from Dr. Setzler's conduct, but he does not say that such conduct

[5]

fell below any objective, national standard of care; much less does he articulate the standard.

According to the defendant, Dr. Graham's report states that "the damage to the peroneal nerve … should not have occurred as part of a routine arthroscopic surgery" and identifies "the incident rate (zero) for nerve injury if the procedure is performed correctly." (Doc. 86 at 6). Actually, it does neither. Rather, the report states that nerve injury usually does not occur (not that it "should not" occur) in a routine meniscal repair and that he personally has never caused any such injury (not that no properly functioning surgeon ever does).

The holes in the report are gaping. Was this a routine meniscal repair? Did one or both of the cysts, or anything else, take the procedure out of the routine? Does it matter whether it was a routine repair or not? How? Was use of a mechanically rotating blade within the para-meniscal cyst appropriate? Would displacement of the nerve by the Baker cyst call for different techniques? If so, what techniques, and did Dr. Setzler employ them? Did Dr. Setzler employ an inside out suturing technique? If so, is that medically appropriate? The list goes on and on. Dr. Graham's report merely tosses out unconnected statements with no attempt to tie them into a coherent picture of medical malpractice. He does not even accuse Dr. Setzler of malpractice, and his various statements are as consistent with the absence of malpractice as they are with its presence.

"The success of a plaintiff in establishing a case of medical malpractice rests heavily on the shoulders of the plaintiff's selected medical expert." *Hutto*, 9 So. 3d at 384. For the reasons set forth above, the opinions and grounds articulated in Dr. Graham's report are not up to the task.[4]

---

[4] The defendant explains that Dr. Graham is "a busy practicing physician who is not a professional witness." (Doc. 86 at 6). The requirements for proof of medical malpractice do not fluctuate based on such considerations.

[6]

Dr. Graham's report was submitted under Rule 26(a)(2)(B), which required a report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." To the extent the defendant seeks to use Dr. Graham to establish Dr. Setzler's malpractice, his report does not contain the opinions needed to do so, nor the bases and reasons for them. The defendant can thus establish Dr. Setzler's malpractice only if it is allowed to present additional opinions and grounds at trial that do not appear in Dr. Graham's report.

"If a party fails to provide information … as required by Rule 26(a) …, the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[C]ompliance with the requirements of Rule 26 is not merely aspirational," *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004), and Dr. Graham's report plainly fails to provide the information required by Rule 26(a)(2)(B).[5] The burden thus falls to the defendant to demonstrate either that its failure to disclose was substantially justified or that the failure is harmless.[6] This determination is left to the broad discretion of the lower court.[7] The defendant does not contend that its failure to comply with Rule 26(a)(2)(B) was substantially justified, but it does argue that the failure is harmless. (Doc. 86 at 5-7).

---

[5] *See, e.g., OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008) (expert's affidavit that "provides no meaningful analysis of how and why [the defendant's] actions breached the standard of care [as the expert opined]" did not satisfy Rule 26).

[6] *E.g., Roberts ex rel. Johnson v. Galen, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citing Fifth and Seventh Circuit cases); *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (citing a First Circuit case); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001); *accord Morrison v. Mann*, 271 Fed. Appx. 841, 845 (11th Cir. 2008).

[7] *E.g., David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002); *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998); *accord Morrison*, 271 Fed. Appx. at 845.

First, the defendant argues its nondisclosure is harmless because the plaintiff has long known, from the answer, amended answer, and Rule 26(f) report, that the defendant contends Dr. Setzler committed malpractice. (Doc. 86 at 5-6). This misses the point. Rule 26(a)(2)(B) entitles an opponent to be advised – by the expert, not by the party – that the expert believes malpractice occurred, and it also entitles the opponent to be advised by the expert of the ancillary opinions required by Mississippi law to establish malpractice (including the content of the standard of care, how it was breached, and proximate cause), as well as the bases and reasons for these opinions. The plaintiff's awareness that the defendant suspects Dr. Setzler of committing malpractice is no substitute for these disclosures.

Second, the defendant argues that any harm to the plaintiff is its own fault, because he did not demand a supplemental report or depose Dr. Graham. (Doc. 86 at 6-7). The defendant would shift the responsibility for an inadequate report from itself to the plaintiff, forcing the plaintiff to ferret out what the defendant, in violating Rule 26(a)(2), failed to provide and penalizing the plaintiff for not rescuing the defendant from the consequences of its omission. This is not the law.[8]

---

[8] *E.g., Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony."); *accord Williams v. Daimler Corp.*, 2008 WL 4449558 at *5 (N.D. Miss. 2008); *Berryhill v. Village of Streamwood*, 2004 WL 1444879 at *5 (N.D. Ill. 2004) ("Plaintiff was entitled to a report in conformity with the Rule and is not required to effectively bail out the defendants by taking [the expert's] deposition and thereby rendering the violation harmless."); *Bonesmo v. Nemours Foundation*, 253 F. Supp. 2d 801, 811 (D. Del. 2003) (because Rule 26 requires a detailed report, "the opposing party is not required to depose the expert to develop what his opinion is or the reasons for it"); *New Colt Holding Corp. v. RJG Holdings, Inc.*, 2003 WL 23508131 at *1 & n.2 (D. Conn. 2003) (describing as "without merit" the proponent's argument that the opponent "may not move to exclude [experts providing inadequate reports] unless [the] experts are first deposed"); *Whetstone Candy Co. v. Nestle USA, Inc.*, 2003 WL 25686830 at *3 (M.D. Fla. 2003) ("[T]he sanctions available under Rule 37(c)(1) are self-executing, in that the opposing party is not required to first seek a motion to compel the information ...."). The Court subscribes to this view. *Harrison Brothers Dry Dock & Repair Yard, Inc. v. Pan Agri International, Inc.*, 2009 WL 3273926 at *3 (S.D. Ala. 2009).

(Continued)

As noted above, a party – such as the defendant – that violates Rule 26(a)(2)(B) without substantial justification or harmlessness "is not allowed to use that information … at a trial." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) also provides that the court "may impose other appropriate sanctions," either "[i]n addition to or in lieu of this sanction." *Id*. The determination whether to exclude the non-disclosed information or to select a different sanction is left to the discretion of the lower court.[9] However, the alternative sanctions listed in Rule 37(c)(1) "are primarily intended to apply when a party fails to disclose evidence helpful to an *opposing* party." *Southern States v. Sherwin-Williams*, 318 F.3d 592, 595 n.2 (4th Cir. 2003) (emphasis in original). Thus, "absent some unusual extenuating circumstances not present here [i.e., substantial justification or harmlessness], the appropriate sanction when a party fails to provide certain evidence to the opposing party as required in the discovery rules is preclusion of that evidence from the trial." *Klonoski v. Mahlab*, 156 F.3d 255, 271 (1st Cir. 1998). The defendant offers no reason the appropriate sanction here should be anything less than exclusion of Dr. Graham, and the Court finds that remedy appropriate.

For the reasons set forth above, the plaintiff's motion is **granted**. The defendant is precluded from offering testimony from Dr. Graham to establish that Dr. Setzler committed medical malpractice.[10]

---

The defendant suggests the Court has embraced its position, but it has not. In both of the cases it cites, the plaintiff elected to depose the expert and, by doing so, acquired (or, in one case, refused to acquire) the omitted information, and in neither case did the plaintiff complain that it was unable to properly prepare for the deposition due to the violation of Rule 26(a)(2). A party may choose to ameliorate its prejudice by proceeding to deposition but, as the cases cited above reflect, it has no duty to do so.

[9]*E.g., Roberts,* 325 F.3d at 783-84; *Yeti*, 259 F.3d at 1106; *Trost v. Trek Bicycle*, 162 F.3d 1004, 1009 (8th Cir. 1998); *accord Cooper*, 390 F.3d at 728.

[10] The practical effect of this ruling is less than clear. When the plaintiff filed his motion, the defendant was traveling under its amended answer, which asserted a defense under Section
(Continued)

DONE and ORDERED this 20th day of January, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

85-5-7. (Doc. 18 at 4). After the motion was filed, but before the defendant responded to it, the parties submitted their joint pretrial document, in which no such defense appears. (Doc. 81 at 6-13). The joint pretrial document, having been incorporated in the final pretrial order, constitutes the final statement of the issues remaining in the action. (Doc. 85 at 2). To the extent the defendant's preserved affirmative defenses require proof of Dr. Setzler's malpractice, this order will control.