# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **DUDLEY BOLTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION 08-0310-WS-M** |
| | ) |
| **WJV MISSISSIPPI, INC., etc.,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

This matter is before the Court on the defendant's motion in limine.  (Doc. 88).[1] The plaintiff has filed a response and the defendant a reply, (Docs. 96, 98),[2] and the motion is ripe for resolution.[3]

### A.  Evidence of Liability Insurance.

The plaintiff agrees to this motion in limine.  (Doc. 96 at 1).  Accordingly, the motion is **granted**.  The plaintiff, his counsel and all witnesses are precluded from

---

[1] The motion actually consists of 14 motions in limine, each of which the Court treats as a separate motion.

[2] The defendant's motion to file a reply, (Doc. 98), which has drawn no objection, is **granted**.

[3] "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  The same is of course true of other motions. Accordingly, the Court limits its consideration to those arguments the parties have expressly advanced.

making any reference to indemnity or defense coverage to the defendant for claims in this case.

### B.  Evidence that Water Was Present on Other Occasions.

The plaintiff agrees to this motion in limine.  (Doc. 96 at 1).  Accordingly, the motion is **granted**.  The plaintiff, his counsel and all witnesses are precluded from making any reference to water on the floor of the restaurant on any other occasion.[4]

### C.  Evidence that the Kitchen Was the Source of the Water.

The plaintiff agrees to this motion in limine.  (Doc. 96 at 1-3).  Accordingly, the motion is **granted**.  The plaintiff, his counsel and all witnesses are precluded from making any reference to the water in which the plaintiff allegedly slipped having come from the kitchen.

### D.  Testimony by Certain Lay Witnesses.

The plaintiff first identified Lisa Buchanon, Kelli Ramirez and Mike Burch in his final pretrial disclosures in December 2010.  (Doc. 88 at 3).  He admits he did not timely disclose them under Rule 26(a).  (Doc. 96 at 3).  He does not assert that his failure was substantially justified or harmless, and he does not maintain that the standard sanction for such non-disclosure – a prohibition on using the witnesses at trial – should not obtain here.  Instead, he argues that these witnesses should still be available to him for unidentified impeachment purposes.  (*Id.*).

---

[4] The plaintiff purports to reserve the right to introduce such evidence as "impeachment." (Doc. 96 at 1).  Whatever it is called, no evidence of water on the restaurant floor other than at the time of the accident may be offered by the plaintiff unless the defendant first opens the door, as by suggesting there were no such occasions.

Rule 26(a)(1)(A)(i) requires a party to disclose the name and contact information "of each individual likely to have discoverable information … that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment …."  Rule 37(c)(1) provides that, if a party "fails to … identify a witness as required by Rule 26(a) …, the party is not allowed to use that … witness to supply evidence … at a trial" unless the omission is substantially justified or harmless. However, "[a]s disclosure of evidence offered solely for impeachment purposes is not required under [Rule 26(a)], this preclusion sanction likewise does not apply to that evidence."  It thus appears that improperly undisclosed witnesses need not be excluded from providing purely impeachment testimony.  *See also Cooley v. Great Southern Wood Preserving*, 138 Fed. Appx. 149, 161 (11th Cir. 2005) (affidavits of undisclosed witnesses were properly excluded because they were not used solely for impeachment).

Joe Bowers was timely disclosed, but the only evidence he is identified as possessing is that, on a different occasion and in a different location, there was once water on the restaurant floor.  (Doc. 88 at 5).  As discussed in Part B, no such evidence is to be allowed.  The plaintiff does not disagree, but again maintains he can call Bowers for impeachment purposes.  (Doc. 96 at 3).  As noted, Rule 37(c) does not preclude his use for such purposes.

For the reasons set forth above, the motion in limine is **granted**.  The plaintiff is precluded from calling  Lisa Buchanon, Kelli Ramirez, Mike Burch or Joe Bowers as a witness except for impeachment purposes.[5]


### E.  Lay Testimony About the Risk Posed by Water on the Restaurant Floor.

The defendant seeks to exclude opinion testimony from the plaintiff, the defendant's restaurant manager (Kellie Cowan), and its corporate representative (Lissa

---

[5] Given the Court's other rulings, it appears doubtful that any occasion to employ these witnesses will arise.

Brand-Kania) as to the risk posed by water on the restaurant floor.  (Doc. 88 at 6-9).  The parties agree that such testimony must come in, if at all, under Rule 701.

Lay opinion testimony is "limited to those opinions or inferences which are … not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  The defendant points to the testimony of the plaintiff's withdrawn expert as showing that the level of risk posed by water on the tile floor of the restaurant to one wearing shoes like the plaintiff's "could have been" tested by an expert, and it concludes that, because this *could* have been the subject of expert testimony, it can *only* be the subject of expert testimony.  The argument proves too much.  By this reasoning, the mere fact that accident reconstructionists can offer expert testimony on how fast a vehicle was moving when it struck an object precludes the driver and any observers from offering their lay opinion as to the vehicle's speed at impact, yet it is clear that such testimony is permissible.[6]

The defendant notes that the old Fifth Circuit affirmed the exclusion of lay opinion evidence from the plaintiff and others that the vessel on which he was injured was dangerous.  *Scheib v. Williams-McWilliams Co.*, 628 F.2d 509, 511 (5th Cir. 1980).  The Court upheld the exclusion, but not on the grounds that such evidence is inherently impermissible under Rule 701.  Instead, the Court ruled that the trial court did not abuse its discretion in allowing such evidence since, given the evidence of an expert as to design defects and of crewmen as to slips and falls on the deck, "there was sufficient evidence presented upon which the jury could make an informed decision." *Id.*

---

[6] *E.g., United States v. Marshall*, 173 F.3d 1312, 1315 (11th Cir. 1999) (a lay witness may testify "that a car he observed was traveling in excess of a certain speed"); *accord Keri v. Board of Trustees*, 458 F.3d 620, 631 (7th Cir. 2006) (describing an observer's opinion as to the speed of a vehicle as "quintessential Rule 701 testimony") (internal quotes omitted); *Asplundh Manufacturing Division v. Benton Harbor Engineering*, 57 F.3d 1190, 1197 (3rd Cir. 1995) (same).

The defendant also notes that this Court has excluded lay testimony from a customer service manager that dropping a 500-pound jet engine several feet from a forklift could not cause damage to the exhaust duct. *United States Aviation Underwriters, Inc. v. Yellow Freight System, Inc*., 296 F. Supp. 2d 1322, 1331-32 (S.D. Ala. 2003). The defendant fails to explain how that result requires exclusion of the very different lay testimony contemplated here.

The defendant next addresses the specific testimony offered by Cowan and Brand-Kania. Cowan testified that, based on her experience at various restaurants over the years, "a wet floor could be slippery" and that "if it's slippery it could cause an unsafe condition for the customers." (Cowan Deposition at 32). She similarly confirmed that "wet floors [can] be a hazard to customers." (*Id*. at 13). The defendant argues that the proposed testimony does not address the risk posed by the particular floor at issue as opposed to floors in general and is therefore irrelevant. (Doc. 98 at 2). Since Cowan drew on her experience at the subject restaurant as well as others, her testimony can reasonably be viewed as confirming that the floor of this restaurant can be slippery and hazardous when wet. It is thus relevant to whether the floor posed a risk to the plaintiff.

Brand-Kania testified that "a hazard would be a wet – wet floor." (Brand-Kania Deposition at 52). The defendant argues this testimony is not binding on it because it fell beyond the scope of the 30(b)(6) deposition notice. (Doc. 98 at 1-2). As made clear in the more extensive joint submission of deposition excerpts and objections, (Doc. 93 at 6), Brand-Kania in giving this testimony was responding to questions concerning the defendant's training video. The deposition notice included testimony regarding corporate safety training regarding slip/trip and fall prevention. Her testimony therefore fell within the scope of the deposition notice.

For the reasons set forth above, the motion in limine is **denied**.

**F.  Evidence that Water on the Floor Was a Dangerous/Hazardous Condition.**

This is a refined version of the preceding motion.  While the defendant previously argued that lay opinion testimony is forbidden whenever expert testimony is possible, it now argues that the unidentified "anti-slip" properties of the restaurant's tile floor furnish a special circumstance that requires the presentation of expert testimony to show that the floor was nevertheless dangerous.  Since the plaintiff has no such expert, the defendant concludes that no evidence that the floor was dangerous is admissible.  (Doc. 88 at 9-10).

The defendant cites no case and offers no analysis demonstrating that the nature of this particular tile of itself precludes the plaintiff from offering lay opinion testimony, otherwise satisfying Rule 701, that such a floor, when wet, poses a dangerous or hazardous condition.  Its position is plausible but unsupported, and the Court will not endeavor to supply the missing support.  The motion in limine is **denied**.[7]

**G.  Causation Testimony by Treating Physicians.**

 The plaintiff plans to prove that the fall caused him certain physical injuries through the deposition testimony of three treating physicians (Drs. Setzler, Gould and Kunis).  The defendant argues their causation testimony should be excluded because the plaintiff "never timely disclosed them as expert witnesses on medical causation or furnished expert reports" as to them.  (Doc. 88 at 11).

The plaintiff did not identify Drs. Setzler, Gould and Kunis in a separate document styled as an expert disclosure, but he did advise the defendant, in his February 2009 interrogatory responses, that he "expects to call his treating physicians as experts to provide testimony as to the … prognosis of his injuries as well as impairment ratings he now suffers as a result of said incident."  (Doc. 88, Exhibit C at 2).  Whether or not this

_____

[7] It is unclear whether the defendant seeks to exclude only opinion testimony or all evidence of any kind that might suggest the wet floor was dangerous.  Certainly the defendant has not established that Mississippi law requires that the existence of a dangerous condition must be proved exclusively by opinion evidence.

language satisfied the disclosure requirement of Rule 26(a)(2)(A),[8] it put the defendant on notice that the plaintiff would present expert testimony from his treating physicians that the accident caused his medical condition.

The plaintiff did not furnish the defendant with expert reports from Drs. Setzler, Gould and Kunis as required by Rule 26(a)(2)(B). Instead, the plaintiff noticed their depositions, excerpts from each of which are expected to be presented at trial in lieu of live testimony. (Doc. 81 at 16-18). Dr. Setzler was deposed in August 2009, Dr. Kunis in August 2010, and Dr. Gould in January 2011. (Doc. 96, Exhibit 3 at 1; *id*., Exhibit 4 at 1; *id*., Exhibit 5 at 1). The plaintiff elicited opinions on medical causation as well as prognosis from each of these practitioners. (Doc. 96 at 10-11; Doc. 98 at 3).

The defendant argues that expert causation testimony from these witnesses should be excluded under Rule 37(c)(1) due to the plaintiff's failure to timely disclose that they would offer such opinions and failure to provide expert reports. (Doc. 88 at 8-10). The plaintiff argues that he provided timely disclosures but concedes he wrongly failed to provide expert reports. He does not contend that his failure was substantially justified, but he does argue the failure is harmless. (Doc. 96 at 6-12). The Court need not address these arguments by the parties, because the defendant has failed to challenge the plaintiff's experts in a timely manner.

As the parties were specifically and repeatedly advised, "[a]ll challenges to expert witnesses, including *Daubert* motions, must be filed not later than two weeks prior to the Final Pretrial Conference." (Doc. 8 at 2; *id*., Attachment at 3; Doc. 31 at 2; *id*.,

---

[8] *See Slaven v. Spirit Airlines, Inc*., 2009 WL 3614980 at *2 (E.D. Mich. 2009) (expert disclosure properly made via interrogatory response); Fed. R. Civ. P. 26 advisory committee comments 1993 amendments (Rule 26(a)(1) serves "[a]s the functional equivalent of court-ordered interrogatories"). Drs. Setzler and Gould were identified as treating physicians in November 2008 and again in February 2009, (Doc. 88, Exhibit C at 3-4; *id*., Exhibit H at 1), long before the July 2010 deadline for expert disclosures imposed by the Rule 16(b) scheduling order. (Doc. 49 at 2). The date of Dr. Kunis' disclosure as a treating physician is not revealed, but it must have occurred before his August 2010 deposition.

Attachment at 3; Doc. 49 at 2; *id*., Attachment at 3). The pretrial conference occurred on January 11, 2011, the date it has been scheduled since May 2009. (Doc. 31 at 1). All challenges to the plaintiff's expert witnesses therefore were required to be filed on or before December 28, 2010. The defendant's motion in limine was filed January 18, 2011. The plaintiff argues that the defendant's objections to the medical causation testimony were waived by its failure to timely raise such a challenge. (Doc. 96 at 12-13).

"[I]n order to ensure the orderly administration of justice, [a trial court] has the authority and responsibility to set and enforce reasonable deadlines." *Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002). Once imposed, "[d]eadlines are not meant to be aspirational …." *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004). The Eleventh Circuit has repeatedly employed this rule to uphold trial courts' enforcement of deadlines.[9] The Court's standard deadline for raising challenges to experts has been carefully calibrated to allow the Court – which holds pretrial conferences and civil trials only quarterly and so is grappling with many similar issues, as well as many other motions in limine, simultaneously in a short period prior to trial – to thoughtfully and timely resolve them.

The defendant does not object to the Court's deadline; indeed, the defendant ignores its existence, even after the plaintiff made it the centerpiece of his waiver argument. Instead, the defendant argues it was not required to challenge the treating physicians' ability to offer expert testimony on medical causation until the plaintiff definitively confirmed he would offer such testimony by identifying specific excerpts from their depositions in the joint pretrial document. (Doc. 98 at 4).

The hidden assumption in the defendant's argument is that it was not on notice that the plaintiff intended to present expert causation testimony from his treating

---

[9] *E.g., School Board of Collier County v. K.C.*, 285 F.3d 977, 981-82 (11th Cir. 2002) (untimely expert testimony); *Enwonwu v. Fulton-DeKalb Hospital Authority*, 286 Fed. Appx. 586, 595 (11th Cir. 2008) (untimely motion for summary judgment); *Edman v. Marano*, 177 Fed. Appx. 884, 886 (11th Cir. 2006) (untimely request for mental examination).

physicians until this point in the proceedings. But, as discussed above, the defendant in fact has been on notice of the plaintiff's intentions since February 2009, and those intentions were further confirmed by his taking of depositions in August 2009 and August 2010 that elicited expert causation testimony from his treating physicians.[10] The plaintiff also has known since July 2010 that the plaintiff has not provided expert reports as to these witnesses. The defendant thus has long possessed all the information required to raise a challenge to these experts.

The defendant suggests that the plaintiff's intentions were clouded in December 2010 by his failure to identify the treating physicians as expert witnesses in his Rule 26(a)(3) pretrial disclosures. (Doc. 98 at 4). But that rule does not require such information in the disclosures; instead, it calls for disclosure only of the name, address and telephone number of each witness and an identification of any witness whose testimony will be presented by deposition. The plaintiff's pretrial disclosures do precisely that, (Doc. 72, Attachment at 2), and they did not introduce any ambiguity as to whether the treating physicians would offer medical causation testimony. Assuming for argument that the defendant was legitimately unsure of the plaintiff's intentions, its remedy was to file a timely challenge, not to sit on its rights until all doubt was removed.[11]

For the reasons set forth above, the motion in limine is **denied**.

---

[10] It does not matter whether the plaintiff noticed these depositions purely for discovery or also for trial, but the fact they were videotaped, (Doc. 58; Doc. 81 at 16, 18), indicates the defendant was on notice that the depositions – including the portions expressing opinions on medical causation – could be offered at trial.

[11] Under the defendant's view, had the plaintiff presented the treating physicians by live testimony rather than by deposition, it could have timely objected to their medical causation testimony at trial simply because it had, until that moment, retained some metaphysical doubt as to whether such testimony would actually be offered.

**H. Expert Testimony Regarding Dr. Setzler.**

The defendant seeks to exclude testimony from Dr. Setzler as to the standard of care governing his surgery on the plaintiff, its breach vel non, and any allocation of fault resulting therefrom. (Doc. 88 at 16). The plaintiff confirms he will not offer testimony from Dr. Setzler on these topics. (Doc. 96 at 14). Accordingly, the motion in limine is **granted**. The plaintiff is precluded from eliciting testimony from Dr. Setzler as to the matter listed above.

**I. Testimony by Dr. Kunis Regarding Cervical Condition.**

The defendant argues that Dr. Kunis' testimony should be excluded under Rule 37(c)(1). (Doc. 88 at 16-17). As discussed in Part G, the defendant has waived this objection. The defendant also argues that Dr. Kunis' testimony should be excluded under *Daubert*. (*Id*. at 17). Because December 28 was the deadline for filing such challenges, this objection is waived as well. The motion in limine is **denied**.

**J. Evidence of Lost Wages.**

Both Rule 26(a)(1)(A)(iii) and the defendant's interrogatories called for a computation of the plaintiff's economic losses, including lost wages. These were due no later than February 2009, but the plaintiff did not provide this information until August 2010, two weeks before the discovery period expired. (Doc. 88 at 18). At that time, the plaintiff disclosed that he had lost 28 days of work to seek medical care, losing $223.08 each day (based on an annual salary of $58,000), for a total of $6,246.24. (*Id*., Exhibit I at 3). In the joint pretrial document, the plaintiff inexplicably increased this figure to $13,719.42. (Doc. 81 at 21).

The defendant seeks exclusion of all lost wage evidence under Rule 37(c)(1). The plaintiff concedes the belated $13,719.42 figure but argues the defendant has not been prejudiced with respect to the $6,246.24. (Doc. 96 at 16-17). The defendant says the prejudice stems from its inability to conduct discovery concerning the wage claim, (Doc.

88 at 18), but this is correct only with respect to the higher figure.  As far back as April 2009, the defendant learned that the plaintiff earned an annual salary of $58,000 and that he had, as of that time, lost 21 days of work due to the accident.  (Plaintiff's Deposition at 20).  Thus, the August 2010 interrogatory response only modestly refined the information the defendant had possessed for well over a year – information that provided the defendant ample incentive and opportunity to conduct further discovery of the wage claim long before the discovery period expired.

The defendant also argues the plaintiff has no evidence of lost wages because he took vacation time for days missed due to the accident.  (Doc. 88 at 17-18).  The defendant does not support its implicit proposition that a tortiously injured party who uses earned vacation time to cover days he misses due to the injury, so as to not experience a drop in cash flow, cannot be compensated for the value of the lost vacation days.

For the reasons set forth above, the motion in limine is **granted** as to the $13,719.42 figure and **denied** as to the $6,246.24.  The plaintiff, his counsel and all witnesses are precluded from arguing, or attempting to establish, that he lost compensation in excess of $6,246.24.

**K. Evidence of Future Medical Treatment/Cost, Permanent Injury/Disability.**

The defendant seeks to exclude evidence regarding the likelihood of future medical treatment and its cost.  (Doc. 88 at 19).  The plaintiff does not oppose this portion of the motion.  (Doc. 96 at 17).  This portion of the motion in limine is thus **granted**.  The plaintiff, his counsel and all witnesses are precluded from arguing, or attempting to establish, that he will or may incur future medical treatment or expense.

The defendant also seeks to exclude evidence regarding any permanent injury or disability under Rule 37(c)(1) for failure to make required disclosures.  (Doc. 88 at 19-20).  As noted in Part G, the plaintiff's interrogatory responses stated that he would rely on expert testimony from his treating physicians  "to provide testimony as to the …

prognosis of his injuries as well as impairment ratings he now suffers as a result of said incident," (Doc. 88, Exhibit C at 2), and the plaintiff then took videotape depositions of the treating physicians eliciting this testimony. The defendant thus was plainly on notice that the treating physicians would testify as experts as to the plaintiff's present and future injury or disability. For the reasons set forth in Part G, the defendant has waived any challenge to this expert testimony. This portion of the motion in limine is **denied**.

### L.  Evidence of Medical Bills and Expenses.

The plaintiff claims past medical damages in the amount of $129,382.50. (Doc. 81 at 21). The plaintiff intends to prove the amount of these damages through a series of exhibits including medical records and billing statements from various providers. (*Id*. at 23-24). The defendant seeks on various grounds to exclude evidence of these costs.

The defendant first asserts that the bills and expenses have not been properly authenticated under Rule 901. (Doc. 88 at 20). Objections to exhibits were required to be presented in the joint pretrial document. (Doc. 49, Attachment at 4). The defendant's objection to plaintiff's exhibits 3-10 preserves no authenticity objection. (Doc. 81 at 25). The objection is therefore waived.

The defendant next argues that testimony from the various physicians concerning the plaintiff's medical bills and expenses would constitute inadmissible hearsay. (Doc. 88 at 20). The defendant does not explain, much less support, its position, which is stated as a one-sentence conclusion. This is inadequate to raise, or prevail on, a hearsay objection.

The defendant objects that Dr. Setzler did not satisfactorily establish the reasonableness and necessity of the charges related to his care. (Doc. 88 at 20). The defendant later "withdr[e]w [its] objection and motion in limine as to the charges from Dr. Setzler's group (Alabama Orthopaedic)." (Doc. 96, Exhibit 9). The motion in limine is thus **denied** with respect to these charges.

The defendant similarly objects that Dr. Kunis did not satisfactorily establish the reasonableness and necessity of the charges related to his care. (Doc. 88 at 20-21). Dr. Kunis testified that "all of the charges that are performed here are usual and customary and were related only to the cervical spine condition." (*Id*., Exhibit G at 49-50). The defendant complains that this testimony is not tied to the specific charges at issue in this case, (Doc. 88 at 20), but they certainly appear to be, since Dr. Kunis testified that the same charges that are usual and customary are also related to the plaintiff's cervical spine condition. At any rate, the defendant offers no authority or analysis for the proposition that a health care provider cannot confirm that specific charges are reasonable and necessary by testifying that *all* charges by the provider are reasonable and necessary.

The defendant similarly complains that, because the specific charges were not made an exhibit to Dr. Kunis' deposition, the jury can only speculate as to whether the medical bills made part of plaintiff's exhibit 8 are in fact the same charges as to which Dr. Kunis testified. (Doc. 88 at 21). Since the exhibit includes Dr. Kunis' bills with respect to the plaintiff, and since Dr. Kunis testified that all such charges are reasonable and necessary, the jury could certainly find that the charges in exhibit 8 are those to which Dr. Kunis referred.

The defendant objects that the plaintiff has no deposition testimony or other evidence that the bills from Springhill Memorial Hospital, the Mayo Clinic, or the Orthopaedic Group were reasonable and necessary. (Doc. 88 at 21). The plaintiff concedes the point but asserts the defendant has waived the objection in two different ways. (Doc. 96 at 18, 19-20).

He first says that Rule 26(a)(3)(B) required the defendant to register its objection by December 28, 2010, fourteen days after the plaintiff's pretrial disclosures. (Doc. 96 at 18). With respect to depositions, that rule applies only to those objections falling under Rule 32(a), governing the general use of depositions at trial, and the defendant's challenge does not fall in this category. With respect to exhibits, Rule 26(a)(3)(B) does not require objection on the grounds of irrelevance, and the defendant's objection appears

to be that, absent evidence of reasonableness and necessity, the medical bills are irrelevant. At any rate, by its terms the deadline imposed by Rule 26(a)(3)(B) applies "unless the court sets a different time," and the Court did so, requiring objections to exhibits to be expressed in the joint pretrial document, (Doc. 49, Attachment at 4), which was filed January 4, 2011. The defendant timely raised its objection therein. (Doc. 81 at 25).

Second, the plaintiff argues the defendant waived its objection (or is estopped to assert it) due to a comment made by its counsel during Dr. Setzler's deposition. (Doc. 96 at 19-20). Plaintiff's counsel did not have a copy of Dr. Setzler's bills to use during the deposition. The following exchange ensued:

> MR. MARTINO: Okay. Jarrod, do we have – are we going to have problems with the medical bills? I think you have them.
> MR. WHITE: I don't actually have them here.
> MR. MARTINO: But, I mean, we aren't going to have a problem with them, are we?
> MR. WHITE: I can't say until I see them, but I don't know any reason we would have a problem if they are standard bills.

(Setzler Deposition at 46). According to the plaintiff, his counsel "reasonably understood defense counsel's representation to mean that there would not be a 'problem' with any of Plaintiff's medical bills so long as they were 'standard bills.'" (Doc. 96 at 20). According to counsel, other defense attorneys have made "similar representations" over the years, which in his experience have meant that no reasonableness or necessity issue will be posed by them "unless there is an obvious issue presented by a bill." (*Id*., Exhibit 8 at 1-2).

There are problems aplenty with this approach. First, of course, counsel inquired only about Dr. Setzler's bills, not anyone else's, and defense counsel's statement cannot reasonably be construed as applying to any bills other than Dr. Setzler's. Second, defense counsel explicitly stated he could not confirm he would have no problem with medical bills until after he had seen them, so he clearly did not waive objection to bills he had not yet seen (which, at that point, apparently was all of them). Third, the term

[14]

"standard bills" is not self-defining.   Standard to whom? Based on what criteria?  Even if it means, as counsel assumed, no "obvious issue presented," the term "obvious issue" is itself not self-defining.  Obvious to whom?  Based on what criteria?

The Court is aware that counsel of good will, such as those before the Court, make various statements in the course of litigation in an effort to smooth its rough edges and keep the litigation from becoming unnecessarily cumbersome or unpleasant.  But the Court cannot on that basis assume that any opaque statement by either side means whatever the speaker's opponent decides it means.  Other counsel may have made "similar representations" in other cases, but language matters, and the Court cannot assume that the conversations in those cases faithfully tracked the language used here. Nor can the Court assume that the ultimate absence of objection in those cases stemmed from an agreement not to object rather than from opposing counsel's conclusion, at the end of the day, that no meritorious objection existed.

The evidentiary submissions offered by the parties in support of the pending motion make clear that they communicated frequently by letter and e-mail on any number of subjects.  No good reason appears that plaintiff's counsel, following Dr. Setzler's deposition, could not have written his counterpart a message setting forth his understanding of the parties' agreement about medical bills.  Doing so would have resulted in either confirmation of his understanding or clarification and an ultimate agreement (or none).  The plaintiff cannot transfer to the defendant the untoward consequences of his failure to engage in this routine practice.  There has been no waiver.

In summary, the plaintiff admits he has no evidence to establish the reasonableness and necessity of the charges by Springhill Memorial Hospital, the Mayo Clinic and the Orthopaedic Group, and the defendant has not waived its objection to the evidence on those grounds.  Accordingly, the motion in limine is **granted** as to those charges.  The plaintiff, his counsel and all witnesses are precluded from making any reference to these charges, attempting to introduce evidence of them, or seeking recovery of the amounts represented by the charges.

The defendant's final objection centers on the plaintiff's initial disclosures.  They are in this instance something of a misnomer, as the plaintiff first provided a "computation of each category of damages claimed," Fed. R. Civ. P. 26(a)(1)(A)(iii), on August 18, 2010, some 21 months after they were due.  (Doc. 8 at 2).  Even calling this a computation is overly generous, since the plaintiff merely identified "total medical specials to date" as $78,909.04, with no itemization by provider or service.  (Doc. 88, Exhibit I at 3).  The defendant promptly requested a supplemental response breaking down the numbers by facility or provider and including the supporting documents as required by Rule 26(a)(1)(A)(iii) and the defendant's discovery requests.  (*Id.*, Exhibit L).  The plaintiff replied that this was "no problem" and that the supplement would be provided "ASAP," (*id.*), but it was almost a month in coming.  What is more, the charges of the various providers in this revised disclosure added up to $129,382.50, (*id.*, Exhibit J at 2), a post-discovery increase of more than $50,000, even though the plaintiff's most recent medical care was in February 2010.  The revised disclosure was provided on September 22 – nineteen days after the discovery period expired and two days before dispositive motions were due.  (Doc. 49 at 1, 5).  This is not the way civil discovery in federal court is supposed to work.

"If a party fails to provide information … as required by Rule 26(a) …, the party is not allowed to use that information … to supply evidence … at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  As discussed above, the plaintiff grossly failed to comply with Rule 26(a)(1)(A)(iii).  The burden thus falls to the plaintiff to demonstrate either that his failure to disclose was substantially justified or that the failure is harmless.[12]  This determination is left to the broad discretion of the Court.[13]

---

[12]*E.g., Roberts ex rel. Johnson v. Galen, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citing Fifth and Seventh Circuit cases); *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (citing a First Circuit case); *Yeti by Molly, Ltd. v. Deckers* (Continued)

The plaintiff attempts to short-circuit this process by asserting that the objection was waived "for the various reasons set out in the immediately preceding discussion." (Doc. 96 at 21). For the reasons set out by the Court in its immediately preceding discussion, there has been no waiver.

The plaintiff asserts that his untimely disclosure was substantially justified due to "protracted and extraordinary difficulties in obtaining [his] medical bills" from early 2010. (Doc. 96 at 22). On its face, this excuse applies only to bills totaling $36,489.07 from UAB and bills totaling barely $2,300 from several associated providers. (*Id.*; Doc. 88, Exhibit J at 2; Doc. 96, Exhibit 11, Bolt Affidavit at 4). As to the remaining sum – exceeding $90,000 – the plaintiff's non-compliance, by his own argument, cannot be substantially justified.

Now to the difficulty of obtaining information from UAB. Dr. Gould's surgery occurred in early February 2010. (Doc. 96 at 22). Not until May 2010 did the plaintiff request medical records and billing statements from UAB Highlands Clinic. (Bolt Affidavit at 2). This three-month delay was not substantially justified, especially considering that the discovery period was quickly winding down.[14]

---

*Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001); *accord Morrison v. Mann*, 271 Fed. Appx. 841, 845 (11th Cir. 2008). The plaintiff accepts this burden. (Doc. 96 at 7).

[13]*E.g., David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002); *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998); *accord Morrison*, 271 Fed. Appx. at 845.

[14] The plaintiff requested records on February 24 and again on April 19, but both times sent the request to the wrong provider. (Bolt Affidavit at 1). It is not immediately obvious how the plaintiff or his counsel, exercising reasonable care, could fail to know the name of his own health care provider, especially since the defendant knew it as early as April 2009. (Doc. 96, Exhibit 10). Nor is it clear why, after being told on March 18 that the first recipient was the wrong one, the plaintiff delayed over a month, until April 19, before trying again. (*Id.*). Similarly, it is not clear why, under such circumstances, the plaintiff did not send simultaneous requests rather than awaiting a second rejection before contacting a third provider. It also (Continued)

A billing statement was received on May 20. (Bolt Affidavit at 2). In August, in the midst of a reconciliation of the insurer's expressed subrogation interest, the plaintiff determined that the billing statement it had received from UAB was not inclusive of all services provided the plaintiff but represented only the charges of Dr. Gould for surgery and post-op services, not those of other providers (principally, the hospital). (*Id.*). However, at the top of each page of the billing statement the plaintiff received in May lies the clear statement, set off by itself and in all capital letters, "BILLING STATEMENT FOR DR. JOHN GOULD'S CHARGES." (*Id.*, Exhibit A). Moreover, even a cursory review of the charges reflected on the billing statement makes it obvious that the charges were those of a surgeon, not a hospital. The first charge is for "office visit," and almost all the rest are for "fusion of foot bones," "revise lower leg tendon," "revision of calf tendon," and "bone marrow aspiration." (*Id.*). The plaintiff's three-month failure to notice the UAB billing statement's incompleteness was not substantially justified.

The plaintiff discovered the incompleteness of the UAB billing statements on or before August 24. (Bolt Affidavit at 2). However, the plaintiff did not contact UAB to obtain its additional billing records until September 15. (*Id.* at 3). Especially given the discovery deadline of September 3, (Doc. 49 at 1), this delay was not substantially justified.[15] The plaintiff received the requested billing statement from UAB within a

---

appears that the plaintiff inexplicably waited several weeks after receiving the second rejection before sending the third request. (*Id.* at 1-2).

[15] On August 31, the plaintiff sought to get billing information from the insurer, by requesting an itemized statement of all charges submitted for payment. (Bolt Affidavit at 2). The insurer responded the very next day, but only with charges paid, not charges submitted. (*Id.*). The plaintiff did not follow up with the insurer until September 16. (*Id.* at 3). This delay as well was not substantially justified.

week, on September 22, (*id*. at 4), demonstrating how quickly the documents could have been obtained had the plaintiff properly tended to the matter.[16]

As this troubled history reflects, the plaintiff's failure to obtain billing records and submit initial disclosures to the defendant in a timely manner was not, as he asserts, due to "difficulties not of [counsels'] making." (Doc. 96 at 23). Appellate courts have routinely found no substantial justification when the non-disclosing party failed to act prudently to ensure timely disclosure.[17] Because the plaintiff's failure to comply with Rule 26(a)(1)(A)(iii) was not substantially justified, he can escape sanction only by showing that the failure was harmless.

The plaintiff first argues that his non-disclosure was harmless because the defendant independently obtained billing records from his providers via subpoena. (Doc. 96 at 21). The Court will accept that, to the extent the defendant on its own timely obtained the information and documents the plaintiff should have provided by initial disclosure and in response to discovery requests, it may not have been prejudiced. The plaintiff, however, has failed to establish that the defendant in fact obtained any such information or documents on its own. He has submitted notices of service of subpoenas, (*id*., Exhibit 10), but he has not submitted the subpoenas themselves, so the Court has no way to confirm that the defendant in fact sought billing records. Nor can the Court

---

[16] Likewise, the insurer provided the itemized breakdown on September 17, (*id*. at 3), one day after it was requested, showing how quickly the plaintiff could have obtained the necessary information from this source had it chosen to do so.

[17] *See Southern States*, 318 F.3d at 598 (awaiting discovery from opponent, without filing a motion to compel such discovery); *Yeti*, 259 F.3d at 1107 (awaiting supplemental report from the opponent's expert without providing a preliminary report or seeking an extension of time); *Bowe v. Consolidated Rail Corp*., 2000 WL 1434584 at **3-4 (6th Cir. 2000) (awaiting a site inspection without seeking an extension of time); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) (a plaintiff awaiting the defense expert's report); *see also Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (party's decision to withhold expert report until he received and reviewed deposition and trial transcripts did not substantially justify the report's tardiness, where the expert could have produced a preliminary report subject to amendment after the transcripts were received and the party could have moved to extend the discovery period).

determine on this record that the defendant in fact received billing records even if they were requested.[18]

The plaintiff next argues his non-disclosure was harmless because the defendant, after finally receiving the disclosures, had plenty of time to develop evidence on reasonableness and necessity. (Doc. 96 at 22). The discovery period, however, ended several weeks before the disclosures arrived. Perhaps the defendant could have investigated reasonableness and necessity, but it could not have identified any witness to provide such evidence at trial, since the time for doing so had long past. The plaintiff has not explained how such circumstances demonstrate harmlessness.[19]

The plaintiff also argues that the defendant could not have been prejudiced because correspondence from its counsel in September 2010 did not assert prejudice from the non-disclosure. (Doc. 96 at 23). The plaintiff cites no authority for the proposition that a party is not prejudiced unless he contemporaneously complains of prejudice, but in any event the defendant did so. On August 2, 2010, the defendant fumed about the plaintiff's chronic failure to provide the required initial disclosures on damages and to properly answer parallel discovery requests, despite repeated demands by the defendant.

---

[18] The only exception is the UAB billing statement covering Dr. Gould's charges discussed above, which the plaintiff himself forwarded to the defendant in May 2010. (Bolt Affidavit at 2 & Exhibit A).

[19] *See, e.g., Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) ("Such modifications to the court's and the parties' schedules [by altering briefing schedules and reopening discovery] supports a finding that the failure to disclose was not harmless."); *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 280 (5th Cir. 2009) (same); *Gordon v. Wal-Mart Supercenter*, 2009 WL 3850288 at *6 (S.D. Ala. 2009) (same); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2nd Cir. 2006) (finding prejudice when discovery would have to be reopened to counter the plaintiff's tardy damages disclosure). The Eleventh Circuit is in accord. *See Nance v. Ricoh Electronics, Inc.*, 381 Fed. Appx. 919, 923 (11th Cir. 2010) (defendant was prejudiced by tardy witness disclosure because "it did not have the opportunity to depose them and conduct thorough discovery"); *cf. Reese*, 527 F.3d at 1263 (upholding trial court's denial of leave to amend because, since the discovery period had ended, the defendants would have suffered undue prejudice).

The defendant explicitly stated that its "ability to conduct discovery concerning the damages claimed has been prejudiced by the failure to disclose plaintiff's contentions about damages" and warned that it "may even ultimately have to move to exclude the damages claimed due to the failure to timely disclose it."  (Doc. 88, Exhibit K).

Finally, the plaintiff suggests the bills are in fact reasonable and necessary, so that prior disclosure could not have improved the defendant's ability to challenge them. (Doc. 96 at 20).  Actually, all the plaintiff can say about the bills is that his (not disinterested) counsel has not noticed "any charges which *facially appeared* to be unreasonable or unnecessary."  (*Id*., Exhibit 8 at 2 (emphasis added)).  Since the Court has not been provided the bills and medical records for review, it would be quite impossible for the Court to agree.  Even were the Court to review the documents, and even were it then to concur with counsel's assessment, it would change nothing, since the entire point is that the defendant was not given the proper, timely opportunity to explore the billings and find issues which may not be obvious from a superficial review.

As the plaintiff is aware from his successful motion under Rule 37(c)(1) to exclude certain expert testimony for the defendant , "absent some unusual extenuating circumstances not present here [i.e., substantial justification or harmlessness], the appropriate sanction when a party fails to provide certain evidence to the opposing party as required in the discovery rules is preclusion of that evidence from the trial."  *Klonoski v. Mahlab*, 156 F.3d 255, 271 (1st Cir. 1998).[20]  The plaintiff offers no reason the appropriate sanction here should be anything less than exclusion of his medical bills and testimony concerning them, and the Court finds that remedy appropriate.

In summary, the plaintiff violated Rule 26(a)(1)(A)(iii), and the violation was not substantially justified.  The violation was harmless only to the extent the defendant timely

---

[20] The determination whether to exclude the non-disclosed information or to select a different sanction is left to the discretion of the lower court.  *E.g., Roberts*, 325 F.3d at 783-84; *Yeti*, 259 F.3d at 1106; *Trost*, 162 F.3d at 1009; *accord Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004).

received by other means (including directly from the plaintiff) the information and documents the plaintiff wrongly failed to disclose. The defendant is **ordered** to file and serve, on or before **February 11, 2011**, its statement identifying what information and documents it received as to the medical bills of each provider (including billing statements and similar documents from the various providers, information or documents from the plaintiff's insurer reflecting the providers' charges, and any information or documents from the plaintiff or other sources) and approximately when it received each.[21] The defendant's response is to include, to the extent reasonably possible, documentary confirmation of its position. The failure to submit a timely response in compliance with this order will result in denial of the motion in limine. The Court will take under submission this portion of the motion in limine on February 11, 2011.

### M. Evidence of Future Pain and Suffering.

The defendant posits there is no evidence of a causal relation between its actions and any future pain and suffering the plaintiff may experience. (Doc. 88 at 22). This skeletal assertion is too undeveloped to be considered. The motion in limine is **denied**.

### N. Evidence of Video Cameras in the Restaurant.

The defendant seeks to exclude evidence about video cameras at the restaurant. The defendant asserts that such evidence is irrelevant and that any relevance is substantially outweighed by the danger of unfair prejudice. (Doc. 88 at 22-23).

After his fall, the plaintiff notified Cowan, the restaurant manager. She found water on the floor in the area of the to-go counter. The plaintiff maintains he fell in the

---

[21] Because the motion in limine has already been denied with respect to Alabama Orthopaedic Clinic and granted with respect to Springhill Memorial Hospital, the Mayo Clinic and the Orthopaedic Group, the defendant need not address these providers in its response.

area of the to-go counter and, as discussed in the Court's order on motion for summary judgment, there is evidence supporting his position.[22]

In his deposition, the plaintiff made statements (and marked a map) which the defendant interprets as meaning he fell in the waiting area, before reaching the to-go counter. If this is so, it changes the legal calculus, because the defendant could be liable for a fall in that area only if it caused, or was on notice of, the wet floor, and the plaintiff apparently has no such evidence. Thus, the defendant would like to show that the fall occurred in the waiting area, not the to-go area.

The defendant's corporate representative testified there were operating video cameras in the restaurant at the time of the accident. She also testified that, as the cameras are currently placed, they would have captured the waiting area, and she has no information that the cameras were placed differently at the time of the accident. There is thus evidence that the defendant created a videotape of the waiting area on the day of the accident which would conclusively establish whether the plaintiff fell in the waiting area.[23] The defendant did not retrieve this videotape before it was recorded over.

According to the plaintiff, this evidence is relevant because it shows the defendant had "the potential … to determine conclusively where Plaintiff slipped and fell, thus eliminating the present controversy." The defendant's failure to do so, says the plaintiff, shows that it "did not want to investigate and preserve potentially conclusive proof of where Plaintiff slipped and fell," which "indicates a consciousness of negligence." (Doc. 96 at 25). The problem for the plaintiff is that, at the time of the accident, there was no "controversy" over where he fell and thus no reason for the defendant to review

---

[22] For example, the plaintiff testified that he slipped between two rugs. There is evidence there were two rugs by the to-go counter but not elsewhere.

[23] The defendant stresses that no videotape of the fall has been located, but its representative testified the tapes are on continuous loop and routinely recorded over, so this absence does not demonstrate there was never a videotape.

videotape to resolve the non-existent controversy.  The proposed evidence is thus not relevant.

The motion in limine is **granted**.  The plaintiff, his counsel and all witnesses are precluded from making any reference to the presence of video cameras in the restaurant.

DONE and ORDERED this 7th day of February, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE